Case No. 19-5117, Leveling the Playing Field at Appellants v. Federal Election Commission. Ms. Shapiro, the Appellants, and Ms. Bork, the Appellant. May it please the Court. My name is Alexandra Shapiro, and I represent Appellants. To prohibit quid pro quo corruption and its appearance, the Federal Election Campaign Act prohibits corporate contributions to and expenditures for federal candidates. The express exception for nonpartisan activity designed to encourage individuals to vote and register to vote is at issue here. In order to permit nonprofit organizations to stage nonpartisan debates using corporate contributions, FEC promulgated the rule at issue here. It provides that to use corporate funds, organizations like the CPD must not endorse, support, or oppose candidates and must use pre-established objective criteria. The CPD has violated these provisions for decades. It is run by diehard Democrat and Republican partisans using criteria designed to exclude independents and everyone other than the nominees of those two parties. An independent never has and never could satisfy the current rule. Yet the FEC has stuck its head in the sand and repeatedly refused to take a hard look at these issues despite repeated complaints starting as far back as 1998. And the result has been to subvert the stated purpose of the statutory exemption and the will of the public, which overwhelmingly wants to hear from others in the debates. The post-reman's decisions in this case are arbitrary, capricious, and contrary to law for a number of reasons. They disregard and misrepresent critical evidence. The reasoning is contrived and pretextual. And in the context of the FEC's long history on this issue, it's clear that the decisions are nothing more than an exercise to manufacture reasons to justify a preordained result. The history includes, it starts in 1998 when the FEC rejected its own general counsel's recommendation to find reason to believe that the statute was being violated. Then in 2000 and 2004, the FEC dismissed complaints involving the current rule that we are challenging. And even at that time, in 2000, the Buchanan Court, while deferring to the FEC at the time, noted that the evidence at that time was not insubstantial, that it makes sense to find reason to believe that the regulation was being violated, and that a reasonable person could easily disagree with the FEC's credibility findings, and that an ordinary person might easily find reason to believe. Then we have this case. And in this case, what happens nearly 15 years later, the FEC initially simply ignores both the petition and the administrative complaint, and only acted after appellants brought a lawsuit, then issued cursory dismissals that the district court found to lack any reasoned decision-making, and then issued these post-remand decisions. No one has... On your theory, could the FEC allow debate sponsors to have any eligibility requirement that's key to a minimum showing in the polls? Potentially, yes. The issue here is that... 15% is too high, but 5% would be okay. I think there's nothing in the record that would indicate that lowering the polling threshold by a sufficient amount would create the kind of problem that we see with the 15% threshold. There are other... How is the 5%, or whatever the number is, 5%, 2%? How is it any less pre-established in advance? And how, assuming it were, and how is it any less subjective? The reason it could be less subjective, and to be clear, we're not advocating any particular polling threshold. The evidence shows that 15% in particular is so high that no one other than a self-funded billionaire who's not previously run as a Democrat or Republican could achieve. And so... You're making an argument that the rule is overly restrictive. But I'm not sure you're making an argument that the rule isn't objective. 15% is 15%, just as 5% would be 5%. Well, I think respectfully, Your Honor, I think you have to take it in the context of this particular organization and its history, the CPD. And I think the history of it, starting back at the beginning, it was, as the record makes clear, it was founded by the then-chairman of the Republican and Democratic parties. They announced that the purpose was to create a permanent framework for debates between their two parties' nominees. And then Mr. Fahrenkopf remains the chairman of the organization. It continues to be stacked and has been for the last three decades with many other partisans who are actively involved in the politics of those two parties, including donating money and acting to help the campaigns of the nominees who participate in the debates. And so I think you have to take the 15%, not just as a question in a vacuum of whether 15% might otherwise be objective, but consider the history, the partisanship of the folks in charge. We've already upheld the 15% rule. Well, the 15% rule has never specifically come to this Court as such. The only Court decision that directly addresses an argument that the 15% is not objective is the District Court's decision in Buchanan in the year 2000. And what did we do with the District Court's decision in Buchanan upholding the 15%? As I understand, there was no appeal of that. Oh, there was. We affirmed. I think there – I'm not sure – I notice that you're – I don't think you're briefing. There's the Hagelin case. Is that what – No, I'm talking about Buchanan. I have the order in front of me. It was September 29, 2000. Okay, so that may have been a summary order affirming – Right, it was a summary order, right. I don't think it's been discussed in the brief. But it's still an order and it's still pressing. Well, the Buchanan case was based on the evidence in the administrative record at that time. And one of the things that appellants have done here and which the District Court recognized in its initial opinion is presented abundant additional evidence of what has happened in the years since, including not only the fact that no one else has managed to come close to hurdling this requirement, but also – What is the threshold for matching funds? I'm sorry? For government funding of the elect – Oh, we're not arguing 5%. We're not arguing – It's 5%. It is 5%, as I understand it. The argument in Buchanan was that, look, the funding threshold is 5%, and yet to get on the debate format, we need 15%, and that's arbitrary and capricious. And we – the District Court rejected that and so did we. But that's not our argument, Your Honor. Well, I know it's not your argument, but in the process we upheld the 15% limit. Well, but that was based on the evidence in the record at the time, and we presented abundant evidence that in the ensuing 15 years of both partisanship on the part of the CPD, the fact that no one has hurdled it, as well as these two expert submissions and a ton of other evidence demonstrating that 15% is simply not objective in the sense that it is clearly, in light of all the circumstantial evidence, designed to exclude pre-chosen participants, which the FEC in its own adopting release has acknowledged would be impermissible. So, Ms. Shapiro, it sounds like your claim is – rests on an intent claim designed to preclude, because the mere fact that it may, in many election cycles, preclude the participation of independents is not inconsistent with the statute. Well, I think that's correct in the sense that it ties into the sub-prong A of the regulation, which provides that the organization essentially has to be truly nonpartisan and cannot – It can't support partisanship. Correct. And I think we would not be up here challenging the 15% rule if this organization was truly nonpartisan and there wasn't extensive, decades-long evidence that the people who run it and have chosen this rule in the face of all the evidence suggesting that it's designed to exclude an independent have continued to adopt it. And I would point out there are many other ways to do this. And as, for example, the amicus ferro vote has pointed out, other countries, many states in this country have rules that keep debate participants to a manageable number yet allow multiple candidates on the stage. And we're not advocating any particular way of doing that, such as reducing the polling threshold, but there are many other ways this organization could have done that if it was truly open to including an independent or some third or fourth candidate in the debates. Give me some examples of the ways. So, as I said, you know, a number of other countries have rules. One way would be, as Judge Katz has suggested, to lower the polling threshold. There's also been – Just to be clear, the polling, the 15% support in five major polls is not the only criteria. That's the criteria. We're not challenging the other criteria. Well, one of the other criteria is that the individual has to have registered in enough states to gain sufficient electoral votes to prevail, right? Correct. So that must – does that exclude a good many people? It does, but we're not suggesting that it's not perfectly permissible for the FEC to allow debate sponsoring organizations to take reasonable measures to limit the number of debate participants. They have to be truly objective. That's the issue, and indeed, if the court – if the CPD were to drop the polling requirement and just stick to that 270 rule, history shows that in the last 20 years, the debate stage still wouldn't have been filled by more than a small number of people. Do you recall what the criteria was in the Arkansas case, Forbes? So the – Forbes was excluded – he's a local guy – excluded by – and was a public television station. Right. Right. And so they went – they went with the two major candidates, but they excluded him. Do you know what the criteria was for excluding him? I don't remember off the top of my head. My recollection is that they were actually fairly subjective criteria. Right. I think they were subjective. But Your Honor – But the criteria was whether he's a serious candidate. You know, what does that mean? Agreed, Your Honor. But remember, this FECA debate rule and the FECA itself were not at issue in that case. It was just a pure First Amendment case against the media. And indeed, Justice Stevens pointed out in his dissent that there's this debate – this rule that would have applied if they were under the FECA rubric. So I think that's a different – that would be a very different question if we didn't have the statute. But we have the statute. Yeah, but you're not framing this as a constitutional issue. Absolutely not. It is not – we're not arguing that we have a – anyone has a constitutional right to appear in the debates. We're simply arguing that the CPD has been violating the Federal Election Campaign Act and its implementing regulation. And you've made a robust argument that we should not apply ordinary standards of review but should scrutinize this more stringently. I take it you are not claiming that under ordinary standards – that that's not intended to express any lack of confidence in your ability to prevail under ordinary standards? I mean, you argue that in your – Well, we're arguing both. So we argue in the alternative. But I think – and I think some of the same reasons that we argue that ordinary deference aren't – isn't applicable are reasons why even under ordinary deference the Court should find that this was arbitrary, capricious, and contrary to law. And your claim is focused on the 2012 debate? Yes. The administrative complaint was filed in 2014, and it was based on that. And the FEC in its post-remand decision relied on a lot of evidence after that that actually occurred after the remand related to the 2016 election. And we challenged some of that, but it's – we're not really in a position to point to all the evidence that refutes it because it's outside the administrative record. Guy, one other question, informational. I read someplace – it may have been your brief or it may have been the FEC's brief – that in the election that was the subject of your complaint, there were 500 and some presidential – candidates for president. Do you know how many candidates have registered for – to run for president in this cycle? I don't know, Your Honor, but if I may just point out that that is a – that's something the CPD likes to point to, the fact that a lot of people are on one state's ballot or another. But if you were to actually look at how many candidates were on enough ballots to get to 270, the number goes down to way below 10. Okay. So – Below 10, did you say? Typically, yes. In fact, in the last few election cycles, I think it would have resulted in maybe two or three additional candidates beyond the two major party nominees. The most – in the last 20 years, the most number of candidates that I'm aware of that's been on the ballot in enough states to achieve 270 was the year 2000 when there were, I think, a total of five others. Okay. Thanks. Thank you, Your Honor. And I think I lost my rebuttal time, but if I might have one minute, Your Honor. We'll give you a minute. Thank you. Thank you. Good morning, Your Honors. I am Haven Ward on behalf of the Federal Election Commission. May it please the Court. The Commission is not unsympathetic to the challenges that third party and independent candidates face. However, the Supreme Court has repeatedly held that it is not an acceptable governmental objective to level the playing field or to otherwise attempt to equalize candidate financial resources. The Supreme Court has not found that these are merely unimportant goals. It has found them to be illegitimate goals. Let's focus on the statutory question, whether this organization supports the parties. Oh, I'm sorry. The Commission, in analyzing that specific question, it reviewed all the historical evidence again, even though this Court in the Hagelin case did not deem that to be required, as well as the new evidence about more recent activity. And the Commission, as a broad matter, drew two distinctions that informed their analysis. The first is whether or not a particular board member is acting in a personal versus official capacity on behalf of the organization. And the other is that the probative value of evidence falls as time passes. Both of these principles are widely acknowledged throughout any number of area of laws, and the Commission did not abuse their discretion here. It appears that the – it's hard to tell exactly how much weight the Commission gave, but the conflict of interest policies that the CPD claims it has in place were not in the record or not fully probed. It seems important where – particularly where a nonprofit organization is dealing in this very – in an area where people's allegiances and passions might easily be, at least viewed by the public, to cross over from their personal capacity to their board capacity. It seems important to have conflict of interest policies in place. To answer your question, there was in the record the actual conflict of interest policy. But, Your Honor, in terms of assessing whether or not it's important to have – for an organization to have these types of documents, two things. First is that whether or not they had prophylactic policies in place does not itself evidence whether or not they were acting in a biased or otherwise inappropriate manner. That would not – that is not a basis for the Commission to find reason to believe. Second, Your Honor, is that the Presidential Debate Commission went far beyond what the FEC probably even could as a constitutional matter by prohibiting, even in a personal capacity, donations to candidates in presidential years. I don't take the petitioners to be seeking any such rule that people couldn't give in their personal capacity. But their point is that it's blurry what capacity people might have been acting in. And the only way to make a clear distinction is if you have clear and clearly understood and public conflict of interest policies that draw the line. Here's your public behavior and here's your private. Your Honor, there is a conflict of interest policy regarding finances is in place. There also was a longstanding informal agreement amongst the board members that they weren't going to act in an official capacity in any campaign. But if you are looking at their, for example, a board member's campaign contributions, it is crystal clear if the donation is coming from that particular individual board member versus the Commission on Presidential Debates. There was no evidence in the record that the Commission on Presidential Debates itself was making campaign contributions. There also is no evidence in the record that the Commission on Presidential Debates otherwise endorsed, supported, or opposed any party. I think the claim is that they're endorsing and supporting both the major parties over any other political actors. So it's support for parties because it's support for the two major parties. And you don't disagree as a legal matter that were the Presidential Debate Commission, in fact, supporting, let's say, equally, both the major parties, that that would be a violation of the statute. Having a debate itself that is compliant with FEC regulations is not itself been deemed to constitute supporting the major parties. But that's a much more complicated question. That's the question that's before us. What I'm asking is if there were evidence, for example, that the board were saying, let's do what's best for the major parties, and let's set rules that make sure that we don't have anybody else on the debate stage at this time when parties are in, you know, under threat, let's say, that that would, in fact, be an effort, an impermissible effort to support the parties. Absolutely, Your Honor. As the Commission's decision in no way indicates otherwise. That's expressly what they're looking at. They're looking at what is the activity that can be attributed to the organization itself to determine whether or not the organization itself is acting in a biased manner. What's the criteria for membership in the Federal Election Commission? There are several criteria, Your Honor. I thought, I may be under a misimpression, I thought it was three Democrat appointees and three Republican appointees. The actual statute only requires that there are no more than three of a single particular party. So right now, and for a long time. You have an independent member now. Correct, Your Honor. But you don't have a quorum, right? Not currently today, Your Honor. But the decisions here at issue were unanimous related to the Merck and 4-2 and then, I mean, 4-2 and then 5-1. The vote against Petitioner's position of the six members, was it 4-0 or 4-1 with somebody recusing himself? Which, I can't remember which it was. So prior to Remand, Your Honor, there were six sitting Commissioners. It was 6-0 vote that the Commission should not find reason to believe and pursue an enforcement matter. Post-Remand, there were five sitting Commissioners, and it was 5-0 that the Commission should not find reason to believe. Thank you. Did the Commission invoke its prosecutorial discretion? No, Your Honor. It's on the merits. Not in this case, Your Honor. They evaluated extensively all of the evidence that were before it and came to a conclusion as to. . . So this all deals with the 2012 election? That's correct, Your Honor. Is there a mootness problem here? The Commission has not argued that there is a mootness problem, in part because their arguments are broad. You know, there's this capable repetition, evading review exception. The problem is that that exception has been applied by the Supreme Court only exclusively when the two opponents are the same. But here, for 2020, I don't know whether it's going to be the same or not.  Not to argue against our position, but we haven't taken a position on mootness. And the Libertarian Party, for example, is one of the appellants here, and they have alleged in the record that they intend to continue to. . . But who are the petitioners? Lovell, the playing field, is not a candidate for the presidency, correct? Correct, Your Honor. Okay. There are other petitioners. Who are they? The Green Party. Green Party, okay. And the Libertarian Party. And the Libertarian Party, I assume, had a candidate in 2012 and 2016 and intends to have a candidate in 2020? They have. . . I mean, you conduct mootness, but we can't. There's the question. There's been no specific declaration addressing 2020, just due to the timing, as far as I know. However, generally, they have alleged that they will continue for their foreseeable future to field a presidential candidate. Okay. No more questions, Your Honor? Just two quick points, Your Honors. First, I can just reinforce that the Libertarian Party and the Green Party, who are two of the appellants, have been on the presidential ballot for numerous times and do intend to continue. So I don't think there's any mootness. This is a candidate this year for the Libertarian Party? The nominating conventions are in the summer, so that hasn't been determined. And then I did want to just briefly address counsel's argument. Is there any record site or anywhere we can look for that? For the 2020? Or just generally? What you just said, the Libertarian and the Green Party have been on the ballot every year in recent history. Yes, it's in the complaint, the supplemental amended complaint, which is the complaint that was dismissed by the district court. All right. My colleague's finding the appendix site, so I'll make my other point. With regard to counsel's argument about personal versus official capacity, I just want to reinforce that the main point we're making here is that the statements and political activities of the people who run the CPD are evidence of the organization as a whole's partisan, just as when taken in the context of its history, how it was founded, and so forth. And the only conflict of interest policy which counsel mentioned, which is in the record, is the financial policy. And as the amici from the nonprofit sector have pointed out, that's not sufficient just generally in terms of good governance, but particularly in a context like this one. And no one is arguing that people can't participate in partisan activities. The question is whether people who are so active in partisan activities should be running an organization that operates under this FECA exception. Isn't the consequence of your argument that this organization should not be permitted to host a presidential debate? Unless it completely reforms its leadership and its policies. So in other words, if you prevail, there's no presidential debate this year? No, I disagree with that, Your Honor. There's no reason that presidential debates, for example, couldn't be put on by media organizations or other organizations. In the past, the League of Women Voters, which is a demonstrably nonpartisan organization, hosts other debates than used to host presidential debates. Well, isn't that a solution, too? I mean, if you're complaining about this organization, why not get other organizations like the media itself or the League of Women Voters to host their own presidential debate? Well, that would be great, but I think the point of this is that the CPD has sort of taken over this role, if you will, partly because it is dominated by those who wish to exclude candidates other than the two major party nominees. And it has, as its chairman admitted, institutionalized its debates. And we believe, for all the reasons stated, that they're violating the law. So this court should reverse and grant summary judgment for appellants. And the appendix site for the place in the complaint where the allegations about the LP and the Libertarian Party and Green Party candidacies is at appendix 017. Thank you, Your Honors. Thank you. The case is submitted.
judges: Pillard, Katsas, Randolph